**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTHONY L. COOPER, et al.,

               Plaintiffs,

vs.                                          Case No. 3:08-cv-153-J-32HTS

R.J. REYNOLDS TOBACCO CO.,
etc., et al.,

               Defendants.

_____

<u>ORDER</u>

This case is before the Court on plaintiffs' Motion to Remand (Doc. 13), defendant's Response (Doc. 21), and Court ordered supplemental responses from both parties. (Docs. 36, 41.)

**I.  Background**

An exhaustive history of the underlying litigation is not necessary to resolve the instant motion and determine if the Court has jurisdiction over these claims.  Accordingly, these are the relevant facts.   This matter arises out of a class action involving approximately 700,000 citizens and residents of Florida who suffered or are presently suffering from various illnesses they claim were caused by addiction to cigarettes.  After fourteen years of litigation and several appeals, the Florida Supreme Court in <u>Engle v. Liggett Group, Inc.</u>, 945 So. 2d 1246 (Fla. 2006) decertified the class, and announced that

class members could choose to bring "individual damages actions" within one year of that decision.  Id. at 1269.  Prior to the cutoff date, plaintiffs filed the above captioned cases in state court.  Each case encompasses the claims of approximately 200 plaintiffs for a total of approximately 3400 individual claims.  Defendants timely removed the cases to this Court, citing the Class Action Fairness Act of 2005 ("CAFA") Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  While acceding to the Court's CAFA jurisdiction if the Court tries the cases in groups of at least 100 plaintiffs as they desire, plaintiffs have moved to remand if the Court anticipates adopting defendants' position requiring individual trials for each plaintiff.

## II.  Discussion

The disputed jurisdictional issue is whether this case is a "mass action" as defined by CAFA.  Unfortunately, CAFA as a whole, and the mass action provision in particular, is confusing.  "CAFA's mass action provisions present an opaque, baroque maze of interlocking cross-references that defy easy interpretation . . . ."  Lowery v. Ala. Power. Co., 483 F.3d 1184, 1198 (11th Cir. 2007).  Nevertheless, the Court will walk through CAFA's statutory provisions, keeping in mind two issues: (A) Whether defendants properly removed this case as a mass action pursuant to CAFA; and (B) How defendants' advocacy of individual, rather than joint, trials affects the Court's jurisdiction.

## A.  Removal of the Engle progeny cases was proper pursuant to CAFA

The parties agree that this case was a CAFA mass action at the time of removal.

2

However, the Court has an independent responsibility to determine its subject matter jurisdiction.  See Barnett v. Bailey, 956 F.2d 1036, 1039-41 (11th Cir. 1992).  A determination of whether removal of this case was proper pursuant to CAFA is a two-step process: (1) Is this case a "mass action" as defined by 28 U.S.C. § 1332(d)(11)(B)(I); and (2) Do any of CAFA's statutory exceptions apply?

### 1.  This case is a "mass action" as defined by CAFA

While CAFA only applies to specified "class actions," the statute also states that a "mass action" is to be construed as a "class action" for purposes of the statute. To determine CAFA's requirements of a removable "mass action," the Court must look to two different provisions of 28 U.S.C. § 1332.  CAFA defines the term "mass action" as "any civil action in which: the monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ."  28 U.S.C. § 1332(d)(11)(B)(i).  Furthermore, CAFA only applies to certain types of class actions.  28 U.S.C. § 1332(d)(2).  When combined, this case must meet four requirements to be a removable "mass action."  "These requirements are: (1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1202-03 (11th Cir. 2007) (interpreting CAFA).

3

This case meets the first, second and fourth requirements.  It is "facially apparent" that, by combining the claims of at least 100 smokers who seek damages based on wrongful death, permanent bodily injury, pain and suffering and shortened life expectancy, this case meets or exceeds the $5 million amount in controversy required under CAFA. Indeed, it is likely that each individual plaintiff makes a claim exceeding $75,000.[1] See Exhibit 5 to Defendants' Materials in Support of the Court's Subject Matter Jurisdiction (chart of verdicts in individual smoking cases); see also Williams v. Best Buy Corp., 269 F.3d 1316, 1319 (11th Cir. 2001). This case also has minimal diversity.  Under CAFA, the rule of complete diversity does not apply; a class action can be removed to federal court if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  This case meets the requirement of minimal diversity because by definition all valid plaintiffs are citizens of Florida and Defendant Philip Morris USA, Inc. ("Philip Morris") is a citizen of Virginia.  See Exhibit 4 to Defendants' Materials in Support of the Court's Subject Matter Jurisdiction at 2.  The claims of the plaintiffs likewise present common questions of law because they require the application of the Florida Supreme Court's decision in Engle.

---

[1]     While not at issue in these cases, CAFA provides that the Court only has mass action jurisdiction over plaintiffs whose individual claims meet the $75,000 threshold specified in 28 U.S.C. § 1332(a).  In Lowery, the Eleventh Circuit held that a trial court keeps jurisdiction over the case as a whole even if it lacks jurisdiction over 100 individual plaintiffs due to some of those plaintiffs falling beneath the $75,000 requirement.  Lowery, 483 F.3d at 1204-07.

CAFA's numerosity requirement is a disputed issue.  Plaintiffs have taken the position that severing out the plaintiffs for individual trials following removal would divest the Court of subject matter jurisdiction and require remand.  However, plaintiffs do not dispute that this case met CAFA's numerosity requirement at the time of removal.  The statutory language states in part that a mass action is one "in which monetary relief claims of 100 or more persons are proposed to be tried jointly . . . ."  28 U.S.C. 1332(d)(11)(b)(i).  Here, the original complaint filed in this case named at least 100 plaintiffs requesting a joint jury trial applying the Engle findings to their claims; accordingly, CAFA's numerosity requirement is met.  This requirement will be discussed in greater detail infra as it applies to defendants' intent to sever the claims upon removal.  Nevertheless, the Court agrees with the parties that this case met all four CAFA mass action requirements at the time of removal.

## 2.  None of CAFA's statutory exceptions to jurisdiction apply

While a given case may facially qualify as a removable mass action under CAFA, there are a number of statutory exceptions that either require or allow the federal court to decline jurisdiction.  Those exceptions fall into two broad categories: (a) exceptions to CAFA's mass action provision; and (b) jurisdictional exceptions.

### a.  Mass Action Exceptions

After defining the term "mass action" in the previous section, CAFA limits that definition through statutory exceptions in 28 U.S.C. § 1332(d)(11)(B)(ii).  That part of the

5

statute states that the term "mass action" does not include a civil action where:

> (I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;
>
> (II) the claims are joined upon motion of a defendant;
>
> (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or
>
> (IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

Id.  Out of these four exceptions, two are facially inapplicable.  The second exception does not apply because the claims were not joined upon motion of a defendant but brought in this form by plaintiffs in state court.  The third exception does not apply because these cases are not brought on behalf of the general public; the complaint names individual plaintiffs.

The first exception does not apply because the injuries alleged by plaintiffs are not single events or occurrences occurring solely in Florida or states contiguous to Florida. According to the CAFA legislative history, this exception keeps a case based on a single event or occurrence, like a chemical spill or a building collapse, in state court despite otherwise meeting the definition of a removable mass action.  See S. Rep. 109-14, at 47 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 44.[2]  This exception does not apply to

---

[2]   See pp 15-18, infra, for discussion of the proper role of legislative history in CAFA analysis.

products liability cases like this one because "[t]he sale of a product to different people does not qualify as an event." Id.

The fourth exception presents a closer question if the Court decides to sever out individual plaintiffs for separate trials.  The section removes from the definition of "mass action" claims that have only been consolidated in groups of 100 for pretrial purposes. "This exception permits state courts to consolidate claims for the convenience of discovery, pretrial motions, and other procedural measures, without losing jurisdiction to a federal court."  S. Amy Spencer, Once More into the Breach, Dear Friends: The Case for Congressional Revision of the Mass Action Provisions in the Class Action Fairness Act of 2005, 39 Loy. L.A. L. Rev. 1067, 1096 (2006).   That is not the case here, as the claims are proposed to be tried jointly by the plaintiffs and are currently joined for trial. Accordingly, this provision does not apply to these cases.

### b.  Local Controversy Exception

The local controversy exception to CAFA is located at 28 U.S.C. § 1332(d)(4).  It provides as follows:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)-

(A)(i) over a class action in which-

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant -

7

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d).  The Eleventh Circuit has indicated that "Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'"  Evans v. Walter Industries, Inc., 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S. Rep. 109-14 at 42).

This case fails to meet the "significant relief" prong of the local controversy exception.  In Evans, the Eleventh Circuit seemed to adopt the test of two other courts from other circuits:  "At least two courts have held that a class seeks 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class."  Id. at 1167 (citing Robinson v. Cheetah Transportation, No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006); Kearns v. Ford Motor Co., No. 05-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005).

The defendants in this case are R.J. Reynolds Tobacco Company ("R.J. Reynolds"), Phillip Morris, Lorrillard Tobacco Company ("Lorrilard"), Liggett Group LLC ("Liggett"), and Vector Group LTD (Vector Group).  Only Liggett is a citizen of Florida for diversity purposes.  Applying the Evans test to this case, it seems unlikely that the plaintiffs seek "significant relief" from Liggett.  In its brief in support of the Court's subject matter jurisdiction, defendants proffer that Liggett's domestic market share has ranged from 1.2% to 5.1% since 1973.  In the same time period, R.J. Reynolds' share has ranged from 21.2% to 33.4%, Philip Morris' share has ranged from 21.3 % to 50.5%, and Lorrillard's share has ranged from 7.1% to 10.4%.  It is difficult to imagine that plaintiffs could seek significant relief from Liggett in comparison to the relief sought from the diverse defendants.  This conclusion gains support from the fact that the Florida Supreme Court affirmed the Third District Court of Appeal's ruling that neither Liggett nor Vector's predecessor company, Brooke Group Holding, Inc., were liable at all to the Engle class representatives in the underlying litigation.  See Engle, 945 So.2d at 1276.

The local controversy exception can also be satisfied through the application of 28 U.S.C. § 1332(d)(4)(B) which requires the Court to decline jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  That exception fails here because the "primary defendants" are not all citizens of the State of

Florida.[3]   Courts have used a variety of tests to define the term "primary defendants," which has no statutory definition.  "[I]t has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously . . .; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action."  See Brook v. UnitedHealth Group Inc., No. 06 CV 12954(GBD),  2007 WL 2827808, *5 (S.D.N.Y. Sept. 27, 2007).  However, like the court in Brook, this Court does not need to adopt any of the above tests because there is no rationale to differentiate Liggett as a primary defendant and R.J. Reynolds, Philip Morris, and Lorrillard as secondary defendants.  If anything, Liggett's small market share would cause it to be designated as a secondary defendant.   Accordingly, the local controversy exception to CAFA jurisdiction does not apply in this case.

---

[3]    There is also a separate provision under CAFA, known as the "home state" exception, where the Court may decline to exercise jurisdiction "in the interests of justice and looking at the totality of the circumstances."  28 U.S.C. 1332(d)(3).  The statute lists six factors that the court should consider.  However, the Court does not have the discretion to examine these factors in this case because that exception is only applicable to a class action "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed . . . ."  28 U.S.C. § 1332(d)(3) (emphasis added).  This exception would never apply to this case because if the "primary defendants" test was met, the Court would be required to decline jurisdiction pursuant to 28 U.S.C. 1332(d)(4)(B) since by definition all plaintiffs are Florida citizens.

**B.  Defendants' "remove then sever" strategy has no effect on the Court's CAFA jurisdiction**

Defendants have acknowledged that, while they removed this case based on it being a "mass action" under CAFA with 100 or more plaintiffs, they did so with the premeditated intent of contending that the case should be severed and each plaintiff's case should be tried individually.  While the Court has found that defendants properly removed this case under CAFA, the potential severance of plaintiffs into individual cases forces the Court to confront a situation that the Eleventh Circuit has characterized as "extreme."  See Lowery, 483 F.3d at 1203-04.  Though a different part of CAFA was at issue in Lowery, part of that Court's opinion is instructive:

> The difficulty with the defendants' approach is that under this view the district court could retain jurisdiction over an action even if, in eliminating individual claims, the total number of plaintiffs in the action fell below 100 or the aggregate total of the remaining plaintiffs' claims fell below $5,000,000.  Indeed, in the most extreme example under the defendants' interpretation, the district court would retain jurisdiction over the action even if only a single plaintiff remained with claims in excess of $75,000.

Id.  The Lowery court's reasoning gives this Court a roadmap of how to address the ambiguity inherent in the statute and the anomaly suggested by defendants' interpretation, to wit, that the Court can have CAFA jurisdiction over more than 3400 individual claims that will not be joined for trial.

### 1.  When to Determine the Court's Subject Matter Jurisdiction

Much of the parties' briefing is concerned with when the Court measures its

subject matter jurisdiction.  Defendants rely on the general rule that a federal court must measure subject matter jurisdiction at the time of removal.  See Pintando v. Miami-Dade Housing Agency, 501 F.3d 1241, 1243 n. 2 (11th Cir. 2007).  Under that argument, subsequent events, including severance, are irrelevant to the Court's jurisdiction over these claims.  Plaintiffs assert that the Court should continually measure whether it has CAFA jurisdiction and any future severance would divest the Court of CAFA jurisdiction and force remand.  Their first argument is that the recent Supreme Court case of Powerex Corp. v. Reliant Energy Services, Inc., 127 S.Ct. 2411, 2416-17 (2007) rejects the general rule that subject matter jurisdiction is only determined at the time of removal.  An examination of the case shows this not to be so.  "In Powerex, the Supreme Court held that when a district court remands a properly removed case because it nonetheless determines post-removal that it lacks subject-matter jurisdiction, the remand is covered by § 1447(c) and thus is shielded from appellate review by § 1447(d)."  Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 641 (11th Cir. 2007).  Despite that holding, the Court in Powerex specifically reaffirms "the general rule that postremoval events do not deprive federal courts of subject-matter jurisdiction."  Powerex Corp., 127 S.Ct. at 2417 n. 1.  Plaintiffs have not cited, and the Court has not found, any support for not following the general rule.

Plaintiffs second argument is that CAFA's statutory text and legislative history show that, under CAFA, "courts consider post removal events that affect the propriety

12

of continued jurisdiction."  While the Court discusses those matters in more detail

below, it is worth noting here that other district courts have refused to remand putative

class actions removed under CAFA after denying class certification.  See e.g. Colomar

v. Mercy Hosp., Inc., No. 05-22409-CIV, 2007 WL 2083562, *3 (S.D. Fla. July 20,

2007); see also Bullard v. Burlington N. Santa Fe Ry. Co., No. 08-8011, 2008 WL

2941359, *2 (7th Cir. Aug. 1, 2008) (declining, in the context of a mass action, to allow

a post-removal filing to affect the court's CAFA jurisdiction because the court

"doubt[ed] that anything filed after a notice of removal can affect federal jurisdiction").

In any event, plaintiffs' assertion that the statutory text and legislative history of CAFA

supports their argument is misguided.

## 2.  Statutory Interpretation

The plain language of the statute is where this Court must begin its analysis.  28

U.S.C. § 1332(d)(11)(B)(i) applies to "claims of 100 or more persons" that "are

proposed to be tried jointly."  Not defined in the statute, the word "proposed" means "to

form or declare a plan or intention."  Merriam-Webster's Collegiate Dictionary 936

(10th ed. 1999).  By that definition, it is undisputed that plaintiffs have proposed to try

their cases jointly by filing a complaint in state court naming approximately 200

individuals as plaintiffs, paying a single filing fee, and requesting one jury trial.

Defendants' post-removal intent to request severance would have no effect on the

Court's jurisdiction because the cases were originally "proposed to be tried jointly."

13

While the plain language of the statute may end the inquiry, the Court will also turn to two common and well-established methods of statutory interpretation, both used by the Eleventh Circuit in Lowery.  First, the Court must construe the statute in a way that gives effect to each word of the clause.  See Lowery, 483 F.3d at 1204 (citing Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 166-168 (2004).  Second, the statutory provision must be interpreted in the context of the statute as a whole.  See id. (citing Dolan v. U.S. Postal Service, 546 U.S. 481 (2006).

In this case, there is some tension between these statutory cannons.  On the one hand, if Congress wanted to limit CAFA's application to mass actions that are joined for trial, the word "proposed" could have simply been omitted from the statutory language.  Plaintiffs' interpretation that post-removal severance would oust the Court of CAFA jurisdiction fails to give effect to the word "proposed."

On the other hand, reading the statute in a way that would allow the Court to adjudicate pretrial motions and then sever the plaintiffs out for individual trials would potentially conflict with the mass action exception of 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).  That exception states that a case is not a mass action if the plaintiffs' claims have been consolidated or coordinated solely for pretrial proceedings.  Yet, the effect of defendants' position is that this Court would take CAFA jurisdiction over this case as a mass action, but coordinate it solely for pretrial proceedings before severing out the claims and trying each plaintiff's case separately.

14

However, that a federal court would take CAFA jurisdiction over a properly removed mass action yet eventually try a case with fewer than 100 plaintiffs is a result predicted by another part of the statute's mass action definition which expressly excludes federal jurisdiction over individual claims that are part of the mass action which do not exceed the $75,000 sum set by 28 U.S.C. § 1332(a).  In <u>Lowery</u>, the Eleventh Circuit concluded that a federal court would retain jurisdiction over a mass action despite the $75,000 individual plaintiff requirement causing the number of included plaintiffs to fall below the 100 plaintiff threshold.  <u>See</u> <u>Lowery</u>, 483 F.3d at 1207.  While there is no Eleventh Circuit precedent directly on point regarding the numerosity requirement, the Seventh Circuit recently affirmed the denial of a motion to remand where the plaintiffs attempted, post-removal, to voluntarily dismiss enough individual plaintiffs to bring the number below 100.  <u>See</u> <u>Bullard</u>, 2008 WL 2941359 at *2, <u>aff'g</u> 2008 WL 2315852 (N.D. Ill. Apr. 10, 2008).  The court reasoned that "[i]t does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed."  <u>Id</u>.  Accordingly, CAFA's statutory text indicates that this case belongs in federal court regardless of defendants' premeditated intent to seek severance post-removal.

### 3.  Legislative History

The Eleventh Circuit has instructed that "where the meaning of a statute is discernible in light of canons of construction, [courts] should not resort to legislative

history or other extrinsic evidence." <u>CBS Inc. v. PrimeTime 24 Joint Venture</u>, 245 F.3d 1217, 1225 (11th Cir. 2001).  While the meaning of CAFA is discernible in this case, the Court recognizes that this is a new, complex statute and that reasonable minds may differ.  Accordingly, though "it is error to cloud the plain meaning of a statutory provision with contrary legislative history," it is appropriate to refer to it here because "the legislative history comports with the interpretation that has been adopted . . ." <u>Lowery</u>, 483 F.3d at 1205 (utilizing CAFA legislative history).

CAFA's legislative history is relatively thin.  While there is a Senate Committee Report accompanying CAFA, there is no corresponding House Committee Report. "The Supreme Court has repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Members of Congress involved in drafting and studying proposed legislation." <u>Lowery</u>, 483 F.3d at 1205-06 (citing <u>Garcia v. United States</u>, 469 U.S. 70, 76 (1984))(internal marks omitted).  Accordingly, the Senate Committee Report is the most authoritative source of CAFA's legislative history.  Of course, the Court is mindful that "while a committee report may ordinarily be used to interpret unclear language contained in a statute, a committee report cannot serve as an independent statutory source having the force of law." <u>Miedema v. Maytag Corp.</u>, 450 F.3d 1322, 1328 (11th Cir. 2006) (internal marks omitted).

As persuasively argued by defendants, the language of the Senate Committee

16

Report seems to confirm that it is the plaintiffs' request for a joint trial of 100 or more

plaintiffs, and not actual joinder, that triggers CAFA removal of a mass action.  The

Committee Report states that mass actions are suits "brought on behalf of numerous

named plaintiffs who claim that their suits present common questions of law or fact

that should be tried together."  S. Rep. 109-14 at 43 (emphasis added).  The

Committee Report refers to the same section later by paraphrasing it as applying to

"any civil action in which 100 or more named parties seek to try their claims for

monetary relief together."  Id. (emphasis added).  While the word chosen in the final

version of the statute was "proposed," this legislative history supports that it is the

request for a joint trial, and not whether the joint trial occurs, that triggers federal

jurisdiction.[4]

The Committee Report also provides some clarification on the meaning of the

_____

[4]      This interpretation of the Committee Report is further supported by the remarks
made by Representative Sensenbrenner the day before CAFA became law:

> The Sponsors wish to stress that a complaint in which 100 or more
> plaintiffs are named fits the criteria of seeking to try their claims together,
> because there would be no other apparent reason to include all of those
> claimants in a single action unless the intent was to secure a joint trial of
> the claims asserted in the action.

151 Cong. Rec. H723-01 (daily ed. Feb. 17, 2005) (statement of Rep.
Sensenbrenner).  While this sort of legislative history is less persuasive than the
Committee Report because it represents the view of a single legislator, it is
informative.

pretrial consolidation exception to the mass action provision:

> The final exception would apply to claims that are consolidated or
> coordinated solely for pretrial proceedings. If a number of individually filed
> cases are consolidated solely for pretrial proceedings-and not for trial-
> those cases have not truly been merged in a way that makes them mass
> actions warranting removal to federal court. On the other hand, if those
> same cases are consolidated exclusively for trial, or for pretrial and trial
> purposes, and the result is that 100 or more persons' claims will be tried
> jointly, those cases have been sufficiently merged to warrant removal of
> such a mass action to federal court.

S. Rep. 109-14 at 48.  This strengthens the Court's earlier conclusion that the pretrial

consolidation exception was meant to prevent defendants from removing cases that

are joined only for pretrial purposes, not ones which the plaintiff "proposes" to be tried

jointly.  Accordingly, this exception will not apply to this case.

## IV.  Final Word

While the statutory text and legislative history of CAFA support the Court's

jurisdiction over this action, that does not quite end the discussion.  Defendants'

"remove, then sever" strategy, although procedurally defensible, could be viewed as a

misuse of CAFA jurisdiction.  However, the legislative history explaining the mass

action provision lends support to providing a federal forum in these circumstances,

stating in part that "[t]he Committee finds that mass actions are simply class actions in

disguise.  They involve a lot of people who want their claims adjudicated together and

they often result in the same abuses as class actions."  S. Rep. 109-14 at 47.  Here,

plaintiffs were members of a class action which the Florida Supreme Court decertified,

18

nevertheless allowing the former class members to bring individual claims.  However, rather than filing individual suits, plaintiffs have packaged these "individual" claims in lots of 200 for purposes of trial – thus creating "class actions in disguise."  When seen in this light, plaintiffs' litigation strategy has invited defendants' CAFA removal.  That defendants removed to this Court with the strategic intent to seek severance of plaintiffs' claims has no effect on this Court's subject matter jurisdiction.

Plaintiffs argue that the Court should wait to rule on the motion to remand until the Court makes a decision regarding how to try these cases.  Plaintiffs apparently assert that even though the Court currently has CAFA jurisdiction, the Court will lose that jurisdiction if these cases are not tried jointly in lots of 100 or more plaintiffs.  However, the Court cannot depart from the general rule that jurisdictional facts are assessed at the time of removal.  Moreover, the Senate Committee Report anticipated similar scenarios:

> Current law (that S.5 does not alter), is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be ousted by later events . . ..  If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court . . ..  [I]f subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter judgment.

S. Rep. 109-14 at 70-71.  While, here, it is the defendants who seek to sever the cases, the general rule of assessing jurisdiction at the time of removal obtains.

19

Two caveats are necessary.  Simply because the Court concludes that it has jurisdiction over this case should not imply that the Court believes it should have jurisdiction.  These lawsuits, brought under Florida law, are wholly a creation of the Florida Supreme Court in Engle, based upon more than a decade of litigation in state court.  Adding over 3,400 of these cases to an already full federal docket is not a favorable prospect.  Nevertheless, the Court concludes that CAFA compels this result.

However, this Order is not the final word.  CAFA has provisions which allow plaintiffs (who are seeking remand if they cannot be assured that their cases will not be severed) to apply to appeal this Order and receive expedited consideration if the Eleventh Circuit decides to hear the appeal.  28 U.S.C. § 1453(c).[5]  The Court strongly recommends plaintiffs appeal this Order so that all parties can be assured of this Court's subject matter jurisdiction before devoting the substantial resources necessary to address these thousands of claims.   Accordingly, it is hereby

**ORDERED:**

Plaintiffs' Motion to Remand (Doc. 13) is **DENIED**.[6]

---

[5]   Plaintiffs are advised that under CAFA, they must file their application for appeal with the Eleventh Circuit within seven days of the entry of this Order.  See Evans, 449 F.3d at 1162.

[6]   This Order is entered by the undersigned in this case alone.  However, by separate Order, the motions to remand in the other related cases will be abated pending appeal of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of August, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

jcd

Copies to:

Counsel of Record